IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action Number 17- |
| | : | |
| $44,000,000 IN UNITED STATES CURRENCY, | : | |
| | : | |
| Defendant *in rem*. | : | |

## VERIFIED COMPLAINT *IN REM*

Plaintiff, United States of America, by its attorneys, David C. Weiss, Acting United States Attorney for the District of Delaware, and Lesley F. Wolf, Robert F. Kravetz, and Jamie M. McCall Assistant United States Attorneys, brings this complaint and alleges as follows:

## NATURE OF THE ACTION

1.      This action is brought by the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions seeking forfeiture of certain property traceable to false statements made by Wilmington Trust Corporation ("Wilmington Trust") in securities and regulatory filings between the Third Quarter of 2009 and the Second Quarter of 2010 (the "Relevant Time Period").

2.      By this Complaint, the United States seeks forfeiture of all right, title, and interest in $44,000,000 in United States currency (the "Defendant Funds").  Wilmington Trust has agreed to transfer the Defendant Funds to the United States pursuant to a Settlement Agreement.

3.      This is an action to forfeit property to the United States for violations of 18 U.S.C. § 1005, or a conspiracy to commit such violation.

## JURISDICTION AND VENUE

4.      This Court has subject matter and *in rem* jurisdiction over the matter under 28 U.S.C. §§ 1345 (action commenced by the United States) and 1355(a) and (b) (action for forfeiture which may be brought in the district where any of the acts giving rise to forfeiture occurred), respectively.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1355(b)(1)(A) because some of the acts or omissions giving rise to the forfeiture occurred in this District and pursuant to 28 U.S.C. § 1395(b) because the property is located in this District.

## THE DEFENDANT *IN REM*

6.      On or about October 9, 2017, Wilmington Trust entered into a Settlement Agreement with the United States.  Pursuant to that Agreement, Wilmington Trust agreed to transfer to the United States the Defendant Funds.  Under the terms of the Agreement, Wilmington Trust has agreed not to contest the forfeiture of the Defendant Funds.  The government is unaware of any other potential claimants to the Defendant Funds.

7.      The Defendant Funds represent proceeds traceable to the offense set forth in paragraph 3, supra.

8.      The Settlement Agreement and accompanying Statement of Facts, set forth in Exhibit A to that Agreement, are attached as Annex. 1, and are incorporated fully into this Complaint as if they had been set forth herein.

## FACTUAL ALLEGATIONS

9.      The United States' claims for forfeiture arise out of its investigation of false statements made by Wilmington Trust regarding the quality of its loan portfolio, including its

quantity of past due and nonaccrual loans, as reported in securities filings with the Securities and Exchange Commission ("SEC"), Call Reports filed with the Federal Reserve, and Monthly Regulatory Reports filed with the Board of Governors of the Federal Reserve, between the Third Quarter of 2009 and the Second Quarter of 2010.

10.     At all times relevant to this Complaint, Wilmington Trust, a financial institution as defined by 18 U.S.C. § 20, was a Delaware Corporation and had its principal place of business in Wilmington, Delaware.

11.     As a financial institution, Wilmington Trust was subject to regulatory supervision by the Federal Reserve, and was a "State Member Bank" of the Federal Reserve System, as defined by 12 U.S.C. § 1813(d).

12.     Wilmington Trust was required to file, and did file with the Federal Reserve, a quarterly "Consolidated Report of Condition and Income for a Bank with Domestic Offices Only – FFIEC 041," which is commonly known as the "Call Report." Each Call Report set forth detailed financial data about Wilmington Trust's financial position and the results of its operations for that quarter. Schedule RC-N of the Call Report required disclosure of Wilmington Trust's total amount of loans that were, for that quarter, (a) 30 to 89 days past due; (b) 90 days or more past due; and (c) on nonaccrual status, that is, no longer accruing interest income.

13.     Wilmington Trust was also required to submit to periodic safety and soundness examinations conducted by the Federal Reserve and other state and federal financial regulators. Wilmington Trust was required to report information regarding past due loans to the Federal Reserve in advance of these examinations, which affected the Federal Reserve's conclusions regarding Wilmington Trust's safety and soundness.

14.     As a result of the Federal Reserve's 2009 full-scope examination, Wilmington Trust entered into a Memorandum of Understanding ("MOU") with the Federal Reserve on or about October 21, 2009, that, among other obligations, required Wilmington Trust to submit its total amount of past due loans to the Federal Reserve on a monthly basis (the "Monthly Regulatory Reports").

15.     As a publicly-traded company that was listed on the New York Stock Exchange ("NYSE"), Wilmington Trust was also required to comply with the rules and regulations promulgated by the SEC, including the filing of annual (Form 10-K) and quarterly (Form 10-Q) reports (the "SEC Reports").  Wilmington Trust was required to disclose accurately in its SEC Reports its total amount of loans that were past due for 90 days or more and still accruing interest, as well as its total amount of loans on nonaccrual status.  Both disclosures were among the important metrics used by investors to analyze the quality of Wilmington Trust's loan portfolio and Wilmington Trust's health generally.

16.     A "past due loan" is a loan in which the borrower has not made a required interest or principal payment in accordance with the loan's contractual repayment terms.  The Bank's computerized internal accounting system, known as the "SHAW" system, treated a loan as past due based upon the loan's contractual terms.

17.     A "matured loan" is a term loan which has passed its contractual date for principal repayment.  The SHAW system considered matured loans to be past due.

18.     Although Wilmington Trust's SHAW system treated matured loans as past due, Wilmington Trust utilized a practice of manually overriding SHAW in order to "waive," that is, to not include matured loans that were internally designated as "current for interest" and in the

4

"process of extension" as past due in public reports to the SEC and the Federal Reserve (hereafter the "Waiver Practice").

19.     The Bank's Waiver Practice resulted in a variance between commercial loans treated as past due on its SHAW system and reported publicly as past due in its Call Reports, SEC Reports, and in the Monthly Regulatory Reports.

20.     On or about February 23, 2010, the day after the Bank filed its 2009 Form 10-K with the SEC, the Bank filed an Offering Prospectus with the SEC that outlined its plan to issue 18,875,000 shares of common stock at $13.25 per share.  The Prospectus explicitly incorporated the Bank's 2009 Form 10-K, which did not include approximately $316 million in past due commercial loans which were otherwise treated as past due on its SHAW system, but were not reported as past due because of the Waiver Practice.

21.     The Bank raised approximately $273.9 million from the public stock offering.

22.     The proceeds realized by the Bank by virtue of the Waiver Practice represent a corporate benefit that Wilmington Trust received by selling stock at inflated prices.

## CLAIM FOR RELIEF

23.     Pursuant to 18 U.S.C. § 981(a)(1)(C) "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity'" is subject to forfeiture by the United States.  "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7)(A) to include, among other things, offenses in violation of 18 U.S.C. § 1005 (fraudulent bank entries).  The term "proceeds" includes "property of any kind obtained directly or indirectly, as a result of the commission of the offense giving rise

to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from this offense." 18 U.S.C. § 981(a)(2)(A).

24.     The Defendant Funds constitute and are derived from proceeds traceable to specified unlawful activity, specifically 18 U.S.C. § 1005, or a conspiracy to commit such offense, or are a substitute *res* for such proceeds.  As a result, the defendant funds are subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C).

## REQUEST FOR RELIEF

WHEREFORE plaintiff, the United States prays that the defendant *in rem* be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

DAVID C. WEISS
Acting United States Attorney

By:  _____
Lesley F. Wolf

_____
Robert F. Kravetz

_____
Jamie M. McCall

Assistant United States Attorneys
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware 19899-2046
(302) 573-6277

Dated: October 10, 2017

6

## **VERIFICATION**

I, Special Agent Greg S. Mrozek, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation ("FBI"), that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the FBI.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

_____
Greg S. Mrozek
Special Agent
Federal Bureau of Investigation

Dated:   October 10, 2017

Sworn to before me this
10th day of October, 2017

_____
BARBARA D. LOTHARP
NOTARY PUBLIC

BARBARA D. LOTHARP
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Sept. 7, 2018

7