# ANNEX 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between the United States Attorney's Office for the District of Delaware ("USAO"), and the Wilmington Trust Corporation, as well as its current and former parents, subsidiaries, and affiliates (hereinafter collectively "Wilmington Trust"). The USAO and Wilmington Trust are collectively referred to herein as "the Parties."

## RECITALS

A.      The USAO conducted an investigation concerning whether Wilmington Trust and its executives made false statements regarding the quality of its commercial loan portfolio, including Wilmington Trust's quantity of past due loans, as reported in securities filings with the Securities and Exchange Commission ("SEC"), Call Reports filed with the Board of Governors of the Federal Reserve ("Federal Reserve"), and Monthly Regulatory Reports filed with the Federal Reserve between 2009 and 2010, as set forth in the Third Superseding Indictment in *United States v. Wilmington Trust Corp. et al.* No. 15-23-RGA (D. Del) (all matters that were the subject of, or that otherwise relate to or arise out of, the investigation or the Third Superseding Indictment and prior indictments in the above action are hereinafter referred to as the "Covered Conduct").

B.      Based on the investigation, the USAO believes that there was an evidentiary basis to bring both a civil and criminal case against Wilmington Trust for violating federal criminal and civil law in connection with its public disclosures during the 2009-2010 time period.

C.      The USAO enters into this Agreement based on the individual facts and circumstances presented by this case and by Wilmington Trust. Among the factors considered were the following:

- Wilmington Trust has agreed to make a payment, as provided in Paragraph 1;

- Wilmington Trust is willing to cooperate with the USAO as provided in Paragraph 2 below; and

- Wilmington Trust is willing to agree to the facts and statements set forth in Exhibit A hereto, hereby incorporated by reference.

D.      This Agreement is effective on the date of signature of the last signatory to the Agreement.

## TERMS AND CONDITIONS

In consideration of the mutual promises and obligations of the Agreement, the Parties agree and covenant as follows:

### Payment and Forfeiture

1.      Wilmington Trust shall pay a total amount of $60,000,000.00 to resolve pending and potential criminal claims the USAO has or may have against Wilmington Trust in connection with the Covered Conduct (the "Total Settlement Amount"). Wilmington Trust will transfer $44,000,000 ("the Transferred Amount") to the USAO pursuant to this Agreement.

A.      The United States contends that the facts alleged in Exhibit A and that it intends to assert in a verified *in rem* complaint, *United States of America v. $44,000,000 in United States Currency,* Civil Action No. 17-cv-_____ (hereinafter "the Civil Forfeiture Complaint") provide a basis for the civil forfeiture of the Transferred Amount to the United States. The Civil Forfeiture Complaint will be filed against the Transferred Amount in the United States District Court for the District of Delaware (hereinafter "the Civil Forfeiture Action").

B.      By this Agreement, Wilmington Trust expressly agrees that it does not have standing to appear in and will not appear in, or otherwise litigate any matter in, the Civil Forfeiture Action.   Furthermore, Wilmington Trust expressly waives all

2

constitutional and statutory challenges in any manner to any forfeiture carried out as to the Transferred Amount on any grounds.

C.      By entering into this Agreement, Wilmington Trust has agreed to the Total Settlement Amount of $60,000,000 and has further agreed to abandon all right, title and interest in the Transferred Amount upon the transfer.

D.      Wilmington Trust agrees that it will not file a claim with any Court or otherwise contest the civil forfeiture of the Transferred Amount and will not assist a third party in asserting any claim to the Transferred Amount, except to the extent necessary to cooperate with any claims administrator designated by the Department of Justice to administer the funds subject to forfeiture.  Wilmington Trust certifies that the funds used to pay the Transferred Amount are not the subject of any lien, security agreement, or other encumbrance.  Transferring encumbered funds or failing to pass clean title to these funds in any way will be considered a breach of this Agreement.

E.      Wilmington Trust agrees that the Transferred Amount shall be treated as a penalty paid to the United States government for tax purposes.  Wilmington Trust acknowledges that no United States tax deduction may be sought in connection with the payment of any part of the Transferred Amount.

F.      Wilmington Trust shall transfer the entire Transferred Amount of $44,000,000.00 million within one (1) calendar day after executing this Agreement (or as otherwise directed by the USAO following such period) and shall pay any associated transfer fees.  Such payments shall be made pursuant to wire instructions provided by the USAO.  If Wilmington Trust fails to timely make the payment required under this paragraph, interest (at the rate specified by 28 U.S.C. § 1961) shall accrue on the unpaid balance through the date of payment.

3

G.      The Transferred Amount paid is final and shall not be refunded.  In the event of a breach of this Agreement, the United States may pursue any rights to forfeiture in excess of the Transferred Amount.  The United States agrees that in such event, it will recommend to the Court that the amounts paid pursuant to this Agreement be offset against whatever forfeiture the Court shall impose as part of its judgment.  Wilmington Trust understands that such a recommendation will not be binding on the Court.

H.      Effective upon the transfer, solely for purposes of Supplemental Rule G(3), the Transferred Amount shall be deemed within the control of the United States and subject to Supplemental Rule G(3)(b)(i).

I.      The USAO agrees that payments by Wilmington Trust, in connection with the settlement between Wilmington Trust and the Securities and Exchange Commission (*In the Matter of Wilmington Trust Corporation*, Administrative Proceeding File No. 3-16098, dated September 11, 2014), totaling $16 million, shall be credited against the Total Settlement Amount, leaving the Transferred Amount.

J.      Any judgment entered in the Civil Forfeiture Action is not intended to have any preclusive, collateral estoppel, or res judicata impact on Wilmington Trust.

**Future Cooperation and Disclosure Requirements**

2.      Wilmington Trust shall cooperate fully with the USAO for a period beginning on the effective date and ending no earlier than the conclusion of all district court, and appellate proceedings relating to *United States v. David Gibson, Robert Harra, William North, and Kevyn Rakowski*, 15-23-RGA (D. Del.) in any and all matters relating to the Covered Conduct described in this Agreement. Wilmington Trust agrees to cooperation in a manner consistent with applicable law and rules pursuant to this paragraph as follows:

4

A.     Upon request of the USAO, Wilmington Trust shall designate knowledgeable employees, agents or attorneys to provide to the USAO complete, truthful, and accurate non-privileged information and to cooperate with any assigned claims administrator.

B.     Neither Wilmington Trust nor its officers, directors, employees, agents, or counsel, shall provide any support to the individual criminal defendants charged in *United States v. David Gibson, Robert Harra, William North, and Kevyn Rakowski*, Crim. No. 15-23-RGA (D. Del.), or play any role in the continued investigation, defense, appeal, or collateral review of those defendants' criminal cases, other than (1) as permitted by indemnification law; and (2) providing truthful testimony.

C.     Wilmington Trust shall use its best efforts to make available for interviews or testimony, as required by the USAO, present or former officers, directors, employees, agents and consultants of Wilmington Trust or its former subsidiaries and affiliates. This obligation includes, but is not limited to, sworn testimony in federal trials.

D.     Wilmington Trust shall certify as authentic records all documents and records provided to the USAO or any other federal agency relating to the Covered Conduct, and shall identify and make available applicable records custodians to testify before a federal grand jury or in federal trials.

E.     Wilmington Trust preserves and does not waive its right to assert any applicable privilege.

F.     Should Wilmington Trust learn of credible evidence or allegations related to the Statement of Facts, Wilmington Trust shall promptly report such evidence or allegations to the USAO.

G.     This Agreement does not restrict in any manner the way that Wilmington Trust defends itself in any matter in which it is then a party.

5

## Releases From Liability

3.     Upon receipt of the Transferred Amount, the USAO shall move to dismiss the charges in the pending indictments against Wilmington Trust with prejudice.

4.     Subject to and conditioned upon Wilmington Trust's full payment of the Transferred Amount, the USAO further agrees not to bring any criminal proceeding against Wilmington Trust and any respective successors and assigns relating to the Covered Conduct.

5.     If Wilmington Trust is unable to transfer the Transferred Amount prior to the empanelment of the jury in *United States v. Wilmington Trust et al,* Crim. No. 15-23-RGA (D. Del.), Wilmington Trust shall agree to request a severance from the remaining criminal defendants. Wilmington Trust further agrees to waive any and all claims to dismiss the Third Superseding Indictment under the Speedy Trial Act, 18 U.S.C. § 3161.

6.     This Agreement does not provide any protection against any prosecution or civil action based on any future conduct by Wilmington Trust.  In addition, this Agreement does not provide any protection against prosecution of any current or former officer, director, employee, shareholder, agent, consultant, contractor, or subcontractor of Wilmington Trust for any violations committed by them related to the Covered Conduct.

7.     Wilmington Trust, and any current or former affiliated entity, and any of their/its respective successors and assigns, fully and finally releases the United States and its officers, agents, employees, and servants from any present or future claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Wilmington Trust has asserted, could have asserted, or may assert in the future against the United States and its officers, agents, employees, contractors, and servants relating to the Covered Conduct and the investigation and criminal prosecution to date thereof.

6

8.      As a condition to this Agreement, Wilmington Trust expressly admits the statements and facts set out in the Statement of Facts set forth in Exhibit A.  By entering into this Agreement, however, Wilmington Trust does not admit any liability.

### Waiver of Potential FDIC Indemnification Claims by Wilmington Trust

9.      Wilmington Trust hereby irrevocably waives any right that it otherwise might have to seek (and in any event agrees that it shall not seek) any form of indemnification, reimbursement, or contribution from the Federal Deposit Insurance Corporation ("FDIC") in any capacity, including the FDIC in its Corporate Capacity, for any payment that is a portion of the Transferred Amount set forth in Paragraph 1 of this Agreement.

### Waiver of Potential Defenses by Wilmington Trust

10.     Wilmington Trust, and any current or former affiliated entity (to the extent that Wilmington Trust has the ability to bind such affiliated entity) and any of their respective successors and assigns waive and shall not assert any defenses Wilmington Trust may have to any criminal prosecution or administrative action that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

### Unallowable Costs Defined

11.     All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by Wilmington Trust, and their/its present or former officers, directors, employees, shareholders, and agents in connection with:

A.      the matters covered by this Agreement;

B.      the USAO's investigation of the Covered Conduct;

7

C.      the investigation, defense, and corrective actions undertaken by Wilmington Trust, in response to the USAO's investigation in connection with the matters covered by this Agreement (including attorney's fees);

D.      the negotiation and performance of this Agreement; and

E.      payments made to the United States pursuant to this Agreement

constitute Unallowable Costs.

### Future Treatment of Unallowable Costs

12.     Unallowable Costs will be separately determined and accounted for by Wilmington Trust, and Wilmington Trust shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

### Public Statements by Company

13.     All Parties consent to the disclosure to the public of this Agreement, and information about this Agreement.

14.     Wilmington Trust expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for Wilmington Trust make any extrajudicial statement, contradicting the statements or facts contained in the Statement of Facts, set forth in Exhibit A, or the terms of this Agreement. Any such contradictory statement shall, subject to cure rights of Wilmington Trust, constitute a breach of this Agreement. The decision whether any extrajudicial statement by any person contradicting a statement or fact contained in the Statement of Facts or the terms of this Agreement will be imputed to Wilmington Trust for the purpose of determining whether it has breached this Agreement shall be decided by the Court. If the USAO determines that an extrajudicial statement by any such person contradicts in whole or in part statements or facts in the Statement of Facts or the terms of this Agreement, the USAO shall notify Wilmington Trust, and Wilmington Trust may

avoid a claimed breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification.

15.     Wilmington Trust shall be permitted to raise any defenses, take any legal positions, assert any claims and otherwise defend as Wilmington Trust deems appropriate in all proceedings in which it is then a party.

16.     Wilmington Trust agrees that if it, or any of its/their direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, Wilmington Trust shall first consult with the USAO to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the USAO and Wilmington Trust; and (b) whether the USAO has any objection to the release.

17.     This Agreement is governed by the laws of the United States.  The Parties agree that the exclusive jurisdiction and any venue for any dispute relating to this Agreement is the U.S. District Court for the District of Delaware and that the Honorable Richard G. Andrews will retain continuing jurisdiction to resolve any such dispute.  This Agreement is intended for the benefit of the Parties only and does not create any third-party rights. The Parties acknowledge that this Agreement is made without any trial or adjudication or finding of any issue of fact or law, and is not a final order or a final adjudication of any court or governmental authority.

18.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

19.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

20.     For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties and shall not, therefore, be construed against any Party for that reason in any dispute.

21.    This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

22.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

23.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24.    This Agreement is binding on Wilmington Trust's successors, transferees, heirs, and assigns.  Except as may otherwise be agreed by the parties hereto in connection with a particular transaction, Wilmington Trust agrees that in the event it sells, mergers, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

25.    This Agreement is binding on Wilmington Trust and the USAO but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies, or any other authorities, although the USAO will bring Wilmington Trust's compliance with its obligations under this Agreement to the attention of such agencies and authorities if requested to do so by Wilmington Trust.

26.    This Agreement is effective on the date of signature of the last signatory to the Agreement.  Facsimiles of signature and signatures provided by portable document format (".pdf") shall constitute acceptable, binding signatures for purposes of this Agreement.

### Notice

27.    Any notice to the USAO under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to either Robert F. Kravetz or Lesley F. Wolf, Assistant United States Attorneys, United States

10

Attorney's Office for the District of Delaware, 1007 N. Orange Street, Suite 700, Wilmington, DE 19801. Any notice to Wilmington Trust shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Brian R. Yoshida, One M&T Plaza, 8th Floor, Buffalo, New York 14203. Notice shall be effective upon actual receipt by the USAO or Wilmington Trust.

AGREED:

FOR THE USAO:

DAVID C. WEISS
Acting United States Attorney
District of Delaware

Date: 10/9/17                By: _____
                                 Robert F. Kravetz
                                 Assistant United States Attorney

Date: 10/9/17                By: _____
                                 Lesley F. Wolf
                                 Assistant United States Attorney

Date: 10/9/17                By: _____
                                 Jamie M. McCall
                                 Assistant United States Attorney

11

AGREED:

FOR WILMINGTON TRUST CORPORATION


Date:  10/9/17            By: _____
                                                Brian R. Yoshida
                                                Wilmington Trust Corporation


Date: _____      By: _____
                                                Matthew P. Majarian
                                                Skadden, Arps, Slate, Meagher & Flom LLP

AGREED:

FOR WILMINGTON TRUST CORPORATION

Date: _____          By: _____
                                      Brian R. Yoshida
                                      Wilmington Trust Corporation

Date: 10/9/17                    By: _____
                                      Matthew P. Majarian
                                      Skadden, Arps, Slate, Meagher & Flom LLP

## EXHIBIT A – STATEMENT OF FACTS

1.       Wilmington Trust Company (hereinafter referred to as the "Bank") comprised Wilmington Trust Corporation's Delaware-based, wholly-owned retail and commercial banking subsidiary and was a financial institution, as defined by Title 18, United States Code, Section 20, with deposits insured by the Federal Deposit Insurance Company.

2.       As a financial institution, the Bank was subject to regulatory supervision by the Board of the Governors of the Federal Reserve System and the Federal Reserve Bank of Philadelphia (collectively referred to as the "Federal Reserve").

3.       In connection with both its internal and external reporting of past due loans, the Bank engaged in a monthly process of excluding from final past due numbers its matured commercial loans that were current for interest and in the process of extension (the "Waiver Practice").

4.       As a result of the 2009 full-scope examination of the Bank, the Federal Reserve and the Bank entered into a Memorandum of Understanding on October 21, 2009 (the "MOU"). Pursuant to the MOU, the Bank agreed to submit Monthly Regulatory Reports, which included past due loan information, to the Federal Reserve.

5.       On each of the following dates set forth below, the Bank submitted a Monthly Regulatory Report to the Federal Reserve that did not describe the Bank's use of the Waiver Practice:

| Date | Monthly Regulatory Report |
|------|---------------------------|
| October 30, 2009 | September 2009 |
| November 25, 2009 | October 2009 |
| December 23, 2009 | November 2009 |

| January 29, 2010 | December 2009 |
|---|---|
| February 26, 2010 | January 2010 |
| March 26, 2010 | February 2010 |
| April 29, 2010 | March 2010 |
| May 28, 2010 | April 2010 |
| June 29, 2010 | May 2010 |
| July 23, 2010 | June 2010 |

6.      In addition, in advance of a target examination that commenced in December 2009, and a full-scope examination that commenced in May 2010, the Federal Reserve requested the Bank to submit a list of its past due loans.  In responding to each request (with loan data as of September 2009 and May 2010, respectively), the Bank's submissions did not describe its use of the Waiver Practice.